**UNITED STATES BANKRUPTCY COURT**
DISTRICT OF NEW JERSEY
M.L. KING, JR. FEDERAL BUILDING
50 WALNUT ST., 3RD FLOOR
NEWARK, NEW JERSEY 07102

DONALD H. STECKROTH                                                      (973) 645-4693
BANKRUPTCY JUDGE                                                    Fax: (973) 645-2606

**NOT FOR PUBLICATION**

```
FILED
JAMES J. WALDRON, CLERK
MAR. 17, 2011
U.S. BANKRUPTCY COURT
NEWARK, N.J.
BY: s/ Ronnie Plasner, DEPUTY
```

March 17, 2011

**LETTER OPINION**
**ORIGINAL FILED WITH THE CLERK OF THE COURT**

Wells, Jaworski & Liebman, LLP           Forman Holt Eliades & Ravin LLC
Darrell M. Felsenstein, Esq.              Joseph M. Cerra, Esq.
12 Route 17 North                         80 Route 4 East, Suite 290
Paramus, New Jersey 07653                 Paramus, New Jersey 07652
*Counsel for Plaintiffs*                  *Counsel for Defendants*

**Re:   Dill, et al. v. Meyers et al.**
      **Adv. Proc. : No. 10-01048 (DHS)**
      **Lead Case : No. 09-37551 (DHS) (In re Fred J. Meyers and Elizabeth Meyers)**

Dear Counsel:

      Before the Court is a motion by the Debtor-Defendants, Fred J. Meyers ("Mr. Meyers") and Elizabeth Meyers ("Mrs. Meyers") (together "Debtors" or "Defendants"), seeking summary judgment against the Plaintiffs, Robert Dill ("Dill"), DWR Management, LLC ("DWR"), and Bergenfield Skating Associates, LLC ("Bergenfield") (collectively "Plaintiffs"), pursuant to Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by way of Federal Rule of Bankruptcy Procedure 7056. The Plaintiffs single-count Complaint seeks to bar the Defendants from discharging obligations under three promissory notes in their chapter 7 bankruptcy case, pursuant to 11 U.S.C. § 523(a)(2)(B). The Plaintiffs oppose this motion and respond with a Cross-Motion to Amend the Complaint to state a claim under 11 U.S.C. § 523(a)(2)(A).

For the reasons that follow, the Defendants' motion for summary judgment is denied in part and granted in part. The cross-motion for leave to amend is granted. The Court has jurisdiction over this motion pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## FACTS AND PROCEDURAL HISTORY

### I.   The Defendants' Statement of Facts

The Complaint concerns the dischargeability of the Defendants' obligations under three promissory notes. Defendants and Plaintiffs were friends for a period of time extending back to the early 1990s. (Def.'s Br. in Supp. of Summ. J., p. 4) ("Def.'s Br.") Mr. Meyers owned and operated a General Motors ("GM") franchise, Preakness Chevrolet, in Wayne, New Jersey. (*Id.* at 2). The franchise agreement was terminated in May 2009 as a result of GM's own financial distress. The Defendants were financially destroyed and subsequently sought relief under chapter 7 of the bankruptcy code. (*Id.*)

Prior to the Defendants' bankruptcy filing in October 2009, they borrowed money from the Plaintiffs under three separate promissory notes. (*Id.* at 1-2) First, pursuant to a note dated April 1, 2007, Plaintiff Dill loaned $100,000 to the Defendants, which was further guaranteed by Preakness Chevrolet. ("2007 loan") (*Id.*) On February 13, 2009, pursuant to a second promissory note, Plaintiff DWR, an entity controlled by Dill, loaned $30,000 to the Defendants, which was further guaranteed by Preakness Chevrolet. (*Id.* at 2) On the same day, pursuant to a third note, Plaintiff Bergenfield, an entity controlled by Dill, loaned $10,000 to the Defendants, which was once again further guaranteed by Preakness Chevrolet. (collectively "2009 loan") (*Id.*)

The Defendants did not provide Dill or the other Plaintiffs with any writings, financial statements, or other documents in connection with the loans. (*Id.* at 5) Nor did Dill ever request financial documents or other supporting information from the individual Defendants or from Preakness Chevrolet. (*Id.*) The Defendants further contend that any oral statements made to Dill respected the Debtors' financial condition and as such are not actionable without a writing. (Def.'s Reply Br. in Supp. of Mot. for Summ. J., at 2-3) ("Def.'s Reply")

Finally, as to Mrs. Meyers, the Defendants submit that the Plaintiffs conceded during deposition that she had no role in the solicitation of the loans and made no representations. (Def.'s Reply at 1) Therefore, the Defendants argue that any claims against Mrs. Meyers should be immediately dismissed with prejudice.

## II. Plaintiffs' Additional and Disputed Facts

The Plaintiffs' attorney, Darrell M. Felsenstein, certifies to the Court that the Plaintiffs Complaint "for Non-Dischargeability of Debts pursuant to 11 U.S.C. § 523(a)(2)" sets forth a cause of action under § *523(a)(2)(A)*, rather than (a)(2)(B), as the Defendants argue. (Felsenstein Cert., ¶¶ 2-3) Upon receipt of the present motion, the Plaintiffs realized that the code section referenced within the Cause of Action in the Complaint was in fact § 523(a)(2)(B), which requires a written document respecting a debtor's financial condition. (*Id.* at ¶ 5) The Plaintiffs insist the pleading of subsection (B) rather than (A) was solely a scrivener's error. (*Id.*) They note that they have set forth the factual background and sufficiently pled the elements of subsection (A) throughout the Complaint. *(Id.* at ¶ 3)

The Plaintiffs allege several incidences of "false representations and false pretenses," as required to sustain a cause of action under subsection (A). *See* 11 U.S.C. § 523(a)(2)(A) (*Id.*) The Plaintiffs deny that all statements Defendants made to Dill during the course of negotiating the subject notes respected the Debtor-Defendants' financial condition. Furthermore, the Defendants made these statements and borrowed the money although Preakness Chevrolet had been losing money "since prior to 2007" and had no ability to repay its debts. *(Id.* at 8)

The Plaintiffs argue that the Defendants have had sufficient notice as to the true cause of action. (*Id.* at p. 9) There would be no prejudice or delay as a result of the Court now allowing the Plaintiffs to submit an Amended Complaint to cure the scrivener's error. Accordingly, the Plaintiffs ask that the Court deny the motion for summary judgment and permit the proposed amendment to the Complaint to correctly set forth § 523(a)(2)(A) as the operative statute.

## **DISCUSSION**

### I. Relief to Amend Pleadings under Federal Rule of Civil Procedure 15

Federal Rule of Civil Procedure 15, made applicable to the present proceeding by way of Federal Rule of Bankruptcy Procedure 7015, permits the Court to freely give relief to amend pleadings when required by the interests of justice. Furthermore, Federal Rule of Civil Procedure 8(e) requires the Court to construe pleadings so as to do justice. Deficiencies in pleadings are considered harmless error when the moving party can demonstrate that no prejudice exists to the non-moving party and the non-movant is on notice of the true nature of the pending claim. *In re Little*, 220 B.R. 13, 17 (D.N.J. 1998).

The Defendants argue that this Court should deny the motion to amend because the Plaintiffs are seeking to "derail" the summary judgment motion "by making the challenged pleading a moving target." (Def.'s Reply at 14) (citing *In Zokarski v. Gates*, 561 F.3d 1076, 1086 (10th Cir. 2009)) ("Courts will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint "a moving target"). Furthermore, the Defendants argue that the Court should not allow the Plaintiffs to amend at this late time because

undue delay and prejudice will result. (*Id.* at 16)  Courts should also deny a motion to amend when the proposed amendment is futile. *Id.* (citing *Cohen v. Longshore*, 621 F.3d 12311, 1314-15 (10th Cir. 2010)).  The Defendants argue that the Plaintiffs' complaint cannot succeed even if amended because each and every alleged representation was with respect to the Debtors' financial condition and requires a writing under subsection (B), thereby rendering any amendments futile. (*Id.* at 2)

In the present case, the Complaint clearly sets forth a cause of action under subsection (A).  The reference to subsection (B) appears to be a typographical error and the Defendants are undoubtedly aware of the true nature of the allegations against them.  Tellingly, Defendants' counsel was prepared to argue, and did argue, both subsections in his moving papers and orally before the Court.  Furthermore, whether the alleged representations respected the Debtors' financial condition is in genuine dispute.  In light of Rules 8(e) and 15, the Court finds that the error in the Complaint is a harmless error.  The Plaintiffs are hereby permitted to amend so as to reflect a cause of action solely under 11 U.S.C. § 523(a)(2)(A) and to omit references to 11 U.S.C. § 523(a)(2)(B).

## II.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party. *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration." *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact. *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'" *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original).  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party. *See id.* at 248.

Furthermore, a material fact is determined by the substantive law at issue. *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248). A fact is "material" if it might affect the outcome of the suit under governing law. *Id.* Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment. *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law. *Id.* at 248-50. Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof. *See Celotex Corp.*, 477 U.S. at 322-23. When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment. *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted). On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

### III. Nondischargeability under § 523(a)(2)(A)

The Plaintiffs argue that summary judgment is not appropriate in this matter under 11 U.S.C. § 523(a)(2)(A). That section provides, in pertinent part, that "[a] discharge under . . . this title does not discharge an individual debtor from any debt– . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

> (A) false pretenses, a false representation, or actual fraud other than a statement respecting a debtor's or an insider's financial condition."

11 U.S.C. § 523(a)(2)(A).

False representations and false pretenses require "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Grumbine v. Azeglio (In re Azeglio),* 2010 Bankr. LEXIS 4179, *11 (Bankr. D.N.J. Nov. 23, 2010) (internal citations omitted); *see also In re Suarez,* 2010 Bankr. LEXIS 1340, 2010 WL 1382110, *15 (Bankr. D.N.J. Apr. 5, 2010) (false pretenses or a false representation involves creating a "false impression" or making a "false or misleading statement about something"). Actual fraud "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another–something said, done or omitted with the design of perpetuating what is known to be a cheat or deception." *Grumbine,* 2010 Bankr. LEXIS 4179 at *12 (citations omitted).

A claim under subsection (A) for false pretenses requires the following elements: "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly; (3) that creates a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money . . . to the defendant." *Nicholson v. Nicolai et al. (In re Nicolai)*, 2007 Bankr. LEXIS 339, *7 (Bankr. D.N.J. Jan. 31, 2007) (citing *In re Hambley,* 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)).

Similarly, the elements of false representations and actual fraud under subsection (A) are as follows: (1) the debtor made misrepresentations; (2) that he knew were false at the time they were made; (3) that he made them with the intent and purpose of deceiving a creditor; (4) that the creditor [justifiably] relied on such representations; and (5) that the creditor sustained a loss as a proximate result of the representation. *Trump Plaza Assocs. v. Poskanzer (In re Poskanzer)*, 143 B.R. 991, 999 (Bankr. D.N.J. 1992); *see Field v. Mans*, 516 U.S. 59, 74, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995) (for "justifiable" reliance).

To succeed, the Plaintiffs must prove the elements of subsection (A) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 290, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991). Regardless of whether the Plaintiffs are proceeding on a false pretenses, false representation, or actual fraud theory, several elements are in factual dispute.

**A.     Statements Respecting the Debtor's Financial Condition**

Subsection (A) expressly excludes oral statements or pretenses regarding the debtor's financial condition from the cause of action because subsection (B) requires such misrepresentations to be in writing. *See In re Kiernan*, 17 B.R. 362, 365 (Bankr. S.D.N.Y. 1982) (quoting 1 NORTON BANKRUPTCY LAW AND PRACTICE, Part 27, p. 18); *Blackwell v. Dabney*, 702 F.2d 490, 491 (4th Cir. 1983). There is widespread disagreement among authorities on the scope of the phrase: "a statement respecting a debtor's or insider's financial condition." *See Schneiderman v. Bogdanovich (In re Bogdanovich),* 292 F.3d 104, 112-113 (2d Cir. N.Y. 2002) (collecting cases adopting broad versus narrow scope). To date, the Third Circuit has not taken a position on the issue.

Courts within this circuit are divided between the broad view, generally understood as interpreting the statute to mean "[A]ny communication that has a bearing on the debtor's financial position," *In re Joelson*, 427 F.3d 700, 704 (10th Cir. 2005), and the narrow view, generally understood as limiting the scope to "[A]ny communication that presents an overall picture of the debtor's financial position." *Id.; see D. Nagin Mfg. Co. v. Pollina (In re Pollina)*, 1983 U.S. Dist. LEXIS 16602, 31 B.R. 975, 978 (D.N.J. 1983). Recently, two courts have held that "the type of information [i.e. information a potential lender would usually consider] and its [intended] purpose determine whether a statement is respecting a debtor's financial condition." *Goodman v. Kleiman (In re Kleiman),* 2007 Bankr. LEXIS 1763, 11-12 (Bankr. D.N.J. May 18, 2007) (citing *Nicholson,* 2007 Bankr. LEXIS 339, at *3).

The Defendants insist that each and every assertion made to Dill constituted a "statement respecting the [Debtors'] financial condition." (Def.'s Reply at 2-3) The Court agrees that several statements Mr. Meyers made to Dill are, even under the narrow view, statements respecting the Debtors' financial condition because they convey a picture of the Debtors' alleged financial well-being. (*Id*. at 11-12). As to other statements, however, the record is not as clear. The following exchange, taken from Dill's deposition testimony, relates to the 2007 loan and is illustrative of the practical difficulty in determining whether a statement concerns the financial condition of a debtor. Dill questioned Mr. Meyers as to why he would not borrow money from a bank:

> *A (Dill):* And I do recall the reason he asked me for that loan is he said he didn't – because I asked about banks and he said, "I'd rather not deal with banks because of the paperwork. And that it's also a better return for my friends." (Dill Deposition, 16:4-8) ("Dill Dep.") (explaining that Mr. Meyers initially offered 24% interest, before Dill insisted on 12%)
>
> *Q (Mr. Cerra):* Did you ask him whether he was borrowing money from other sources? (Dill Dep., 20:18-19)
>
> *A (Dill):* [Y]es. I did ask him. I said, "Do you have access?" And he said, "I have a good relationship with Atlantic Bank but, I don't want – the paperwork, there's a lot of paperwork, and I prefer going this way because it's a short-term thing." And I didn't – you know, I took it, I took his word for it. (Dill Dep., 20:20-25)

As to the first prong – the type of information – the Court is hesitant to say that a fear of paperwork, a purported desire to give a generous interest rate, and a short maturity date are the types of information a potential lender would generally consider before making a loan. On the other hand, these may very well be used as inducements by a person with a poor credit history or a significant default risk and as such would be highly pertinent information for potential lenders.

The second prong – the intended purpose of the statements – is equally difficult to determine at this time. At his own deposition, Mr. Meyers did not directly address the intended purpose of the statements made to Dill, although he noted that a higher interest rate was "an extra incentive . . . that people looked at as a good return." (Mr. Meyers Deposition, 26:12-17) ("Meyers Dep.") Mr. Meyers expressly stated, however, that this was not true in Dill's case. (Meyers Dep. 26:12) Furthermore, without hearing directly from Mr. Meyers, it is difficult, if not impossible, to determine his intended purpose of rather vague statements about "paperwork" and "short-term" borrowing. The record does indicate, however, that Mr. Meyers may have misled Dill as to his relationship with Atlantic Bank. If so, this tends to prove that Mr. Meyers did not intend his statements regarding paperwork, interest rates, and short-term borrowing to convey information about a depleted financial condition but induce Dill to lend money without necessarily intending the statements to convey information about his financial condition.

As to the 2009 loans, the record also calls into question the Defendants' characterization of certain statements made by Mr. Meyers to Dill as respecting the Debtors' financial condition:

> *Q (Mr. Cerra):*  What representations or statements did he make to you which caused you to make the [2009] loans?  (Dill Dep., 43:10-12)
>
> *A (Dill):*  That the woman involved was a friend of [Mrs. Meyers] . . . there was a condo for sale, and that if she didn't have the money, because apparently she . . . was owed money from [Mr. Meyers].  If she didn't have the money, she would miss this deal.  So there was a – it was a desperation, quickly had to be done . . . (Dill Dep., 43:13-22)

The Defendants argue that this exchange makes it clear that Dill was aware of the fact that they had outstanding debts to other individuals.  Thus, the statements could be understood as a reflection of the Defendants' overall financial condition.  However, Dill also specifically stated that he did not believe he was "aware at that time" of a personal debt owed by the Meyer's to others. (Dill Dep., 44:12-16)

Ultimately, the Court must construe all facts and inferences in a light most favorable to the non-moving party.  The Plaintiffs argue that the Defendants induced them to make the 2007 and 2009 loans through various statements not relating to the debtor's financial condition.  Part of the analysis in determining whether a statement respects a debtor's financial condition is the intended purpose of the statement.  Thus, the Court finds that at least some of the statements made to the Plaintiffs do not appear to respect the financial condition of the Debtors.  Therefore, the Court denies summary judgment on the allegation that the amended complaint fails to state a claim.

    **B.**    **A False Representation or False Pretense**

As a threshold matter, the representations made by Mr. Meyers to Dill must be false in order to sustain a cause of action under section 523(a)(2)(A).  At oral argument, the Defendants' counsel suggested that no evidence had been presented that would support such a finding and that Mr. Meyers may simply have been telling the truth about not liking paperwork.

The Plaintiffs counter with the obvious, that the statements were meant to induce them into lending money at a time when the Defendants knew they did not have the ability to repay.  It is important to note that even if the statements were literally true, they may still constitute false pretenses or false representations if they created a "false impression" or a "contrived and misleading understanding of the transaction on the part of the plaintiffs."  *See Suarez,* 2010 Bankr. LEXIS 1340 at *15; *Nicholson,* 2007 Bankr. LEXIS 339, at *7.  The disputed falsity of the statements weighs against granting summary judgment.  As at least one court in this Circuit

has noted, "[the] disposition of dischargeability complaints turns largely on the credibility of the parties." *In re Butler*, 86 B.R. 829, 831 (Bankr. E.D. Pa. 1988) (citations omitted). "It is necessary to receive live testimony from the most significant party involved, i.e., the debtor, to make a credibility determination." *Id.* Therefore, the falsity of the statements remains in material dispute and summary judgment must be denied.

### C.  Knowledge of the Falsity and Intent to Deceive

Section 523(a)(2) requires a plaintiff to prove that the defendant knew of the false nature of his statements and that he made them with an intent to mislead or deceive his potential lender. 11 U.S.C. § 523(a)(2); *Poskanzer)*, 143 B.R. at 999; *Hambley,* 329 B.R. at 396. Direct evidence is rarely useful in proving the knowledge and intent elements because the analysis goes to a defendant's subjective state of mind. *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 604 (D.N.J. 1996). "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Nicholson,* 2007 Bankr. LEXIS 339, at *8. Therefore, knowledge of the falsity and intent not to repay, or intent to deceive, may be inferred from the "totality of the circumstances." *Id.* (citing *Ins. Co. of Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995)).

The appropriate standard for both elements is "gross recklessness." *Cohen*, 191 B.R. at 605 (citing *Cohn*, 54 F.3d at 1118) ("[P]roof of reckless indifference to the truth will satisfy both the knowledge and intent to deceive prongs of § 523(a)(2)(A)"); *see also DiPietro et al. v. Drossel (In re Drossel),* 2007 Bankr. LEXIS 3862, *19 (Bankr. D.N.J. Nov. 7, 2007). A defendant is reckless when he commits "unreasonable conduct in disregard of a known or obvious risk from which it is highly probably that harm would follow." *Cohen*, 191 B.R. at 605. This is distinguishable from negligence, which is "characterized as mere thoughtlessness or inadvertence or simple inattention." *Id.*

The Plaintiffs argue that a "review of the statements and actions of Defendants, in obtaining the subject loans, could provide a basis to support "an inference that there was intent to defraud." (Pl.'s Opp'n Br., at p. 8, (citing *Crossingham Trust,* 337 B.R. at 392)). At oral argument, the Defendants' counsel asserted that there is no evidence that Mr. Meyers possessed an intent not to repay the loans. The Defendants suggest that the primary reason for their failure to repay was the failure of General Motors and the subsequent termination of their financing arrangements and franchise. (Def.'s Br., p. 2) They argue that the subject statements were either not meant to deceive, or, in the alternative, they concern a statement of the Debtors' financial condition that is not actionable under § 523(a)(2)(A). (*see* Def.'s Reply, pp. 7-13) Ultimately, these questions as to Mr. Meyer's knowledge and intent are questions of fact that would be inappropriately decided on the present motion for summary judgment. *See Fowler Bros. v. Young* (*In re Young*), 91 F.3d 1367, 1375 (10th Cir. 1996) (intent to deceive is a question of fact).

**CONCLUSION**

For the reasons above, the Plaintiffs' cross-motion to amend the complaint is hereby granted.

A motion for summary judgment must be denied when a genuine issue of material fact remains for trial. Here, material facts remain in dispute as to the Plaintiffs' cause of action under 11 U.S.C. § 523(a)(2)(A). Accordingly, summary judgment is hereby denied as to Defendant Fred J. Meyers.

As to Mrs. Meyers, the record before the Court indicates that she did not communicate directly with any of the Plaintiffs in connection with the loan transactions at issue. For this reason, summary judgment is hereby granted as to Defendant Elizabeth Meyers.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

Very truly yours,

*s/ Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Enclosure