<u>NOT FOR PUBLICATION</u>



**FILED**
JAMES J. WALDRON, CLERK

**MAR. 8, 2012**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: <u>s/ Ronnie Plasner,</u> DEPUTY

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>**FRED J. MEYERS and ELIZABETH MEYERS,**<br>                    Debtors. | Case No.:  09-37551 (DHS)<br><br>Adv. No.:  10-01048 (DHS)<br><br>Judge: Donald H. Steckroth, U.S.B.J. |
| **ROBERT DILL, INDIVIDUALLY, DWR MANAGEMENT, LLC ; and BERGENFIELD SKATING ASSOCIATES, INC.,**<br>                    Plaintiffs,<br>     v.<br>**FRED J. MEYERS and ELIZABETH MEYERS,**<br>                    Defendants. | |

<u>**OPINION**</u>

**APPEARANCES:**

Wells, Jaworski & Liebman, LLP
Darrell M. Felsenstein, Esq.
12 Route 17 North
Paramus, New Jersey 07653
*Counsel for Plaintiffs*

Forman Holt Eliades & Ravin LLC
Joseph M. Cerra, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
*Counsel for Defendants*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court for determination is a trial in the above adversary proceeding. The Plaintiffs, Robert Dill ("Dill" or "Plaintiff"), DWR Management, LLC ("DWR"), and Bergenfield Skating Associates, LLC ("Bergenfield") (collectively, the "Plaintiffs"), seek to bar the Debtor-Defendant, Fred J. Meyers ("Debtor" or "Defendant"), from discharging his obligations under three promissory notes, pursuant to section 523(a)(2)(A) of the Bankruptcy Code.

The Court has jurisdiction pursuant to 28 U.S.C. § 1334 and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I). Venue is proper under 28 U.S.C. § 1409. The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

## BACKGROUND AND PROCEDURAL HISTORY

**I.     Procedural History**

On October 16, 2009, the Defendant filed a joint petition for relief under chapter 7 of the Bankruptcy Code with his wife, Elizabeth Meyers ("Mrs. Meyers"). On January 11, 2010, the Plaintiffs filed a single-count adversary complaint against the Defendant and Mrs. Meyers to determine the nondischargeability of certain debts. The Defendant and Mrs. Meyers moved for summary judgment on January 17, 2011, the Plaintiffs filed opposition, and the matter was heard by the Court on February 7, 2011. The motion was granted as to Mrs. Meyers, who did not participate in the alleged wrongdoing, but was denied as to the Defendant. The parties then proceeded to trial. Evidence was admitted and testimony heard on December 8, 2011 and January 10, 2012. Post-trial statements were submitted to the Court in lieu of closing arguments.

**II.     Background**

The Defendant owned and operated a General Motors ("GM") franchise, Preakness Chevrolet, in Wayne, New Jersey. The Plaintiffs argue that, over the course of a 20-year friendship, the Defendant held himself out to be a religious, charitable, and honorable man. (Pls.' Trial Br., p. 2) Throughout that period, the Plaintiff asserts that the Defendant frequently claimed that his car dealership was growing and "doing very well . . . ." (*Id*.) In 2007, the Defendant approached the Plaintiff seeking to obtain a loan. (*Id*.) In connection with this loan, the Plaintiff alleges that the Defendant made a number of false representations and omissions including that: (1) though the Defendant had a good relationship with his bank, he preferred to borrow from individuals to avoid "all the red tape and paperwork[;]" (2) the Defendant had substantial equity in certain real property; and (3) the Defendant had neither the intent nor the ability to repay the loan. (*Id*. at pp. 2-3) Relying on the above statements, as well as the Defendant's perceived good character, the Plaintiff lent the money needed to get over some short-term business shortfalls and received a promissory note from the Defendant in the amount of $100,000 on April 1, 2007 ("2007 Loan"). (*Id*. at p. 2)

Several years later, in February 2009, the Defendant again approached the Plaintiff seeking an additional loan of $50,000. (*Id*. at p. 3) The Plaintiff denied the request. Almost immediately thereafter, the Defendant again contacted the Plaintiff to discuss a problem a friend of Mrs. Meyers was having. (*Id*.) The Defendant informed the Plaintiff that the woman was "having a problem with a piece of property" and that she would lose the house if she could not put down a $40,000 deposit on the property. (*Id*.) Eventually, the Plaintiff, after discussions with his wife, agreed to make the loan, receiving two promissory notes totaling $40,000 ("2009 Loan"). (*Id*.) The Defendant, however, failed to mention that he owed the woman approximately $100,000. (*Id*.) Just two days

4

after the 2009 Loan, the Defendant defaulted on the 2007 Loan and never made another payment on that Loan or the 2009 Loan.

## DISCUSSION

The Plaintiff was a credible and forthright witness. He essentially testified that the Defendant, through false representations and false pretense, manipulated him into loaning money on multiple occasions in violation of 11 U.S.C. § 523(a)(2)(A). A subsection (A) nondischargeability claim cannot be premised upon oral statements or pretenses regarding a debtor's financial condition as subsection (B) requires such misrepresentations be in writing. *See In re Kiernan*, 17 B.R. 362, 365 (Bankr. S.D.N.Y. 1982) (quoting 1 NORTON BANKRUPTCY LAW AND PRACTICE, Part 27, p. 18); *Blackwell v. Dabney*, 702 F.2d 490, 491 (4th Cir. 1983). When the Court denied the Defendant's motion for summary judgment, it noted the "practical difficulty in determining whether a statement concerns the financial condition of a debtor." *Dill v. Meyers (In re Meyers)*, 2011 Bankr. Lexis 1047, at *12 (Bankr. D.N.J. Mar. 17, 2011). At trial, the Court permitted testimony regarding the Defendant's various oral statements, some respecting his financial condition. Such statements are relevant to a determination of fraudulent intent though same may not serve as the basis of a section 523(a)(2)(A) claim.

Section 523(a)(2)(A), reads, in pertinent part, that "[a] discharge under . . . this title does not discharge an individual debtor from any debt– . . . (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by–

> (A) false pretenses, a false representation, or actual fraud other than a statement respecting a debtor's or an insider's financial condition."

11 U.S.C. § 523(a)(2)(A).

5

False representations and false pretenses require "(1) knowing and fraudulent falsehoods, (2) describing past or current facts, (3) that were relied upon by the other party." *Grumbine v. Azeglio (In re Azeglio),* 2010 Bankr. Lexis 4179, at *11 (Bankr. D.N.J. Nov. 23, 2010) (internal citations omitted); *see also In re Suarez,* 2010 Bankr. Lexis 1340, at *15 (Bankr. D.N.J. Apr. 5, 2010) (false pretenses or a false representation involves creating a "false impression" or making a "false or misleading statement about something"). Actual fraud "consists of any deceit, artifice, trick or design involving direct and active operation of the mind, used to circumvent and cheat another–something said, done or omitted with the design of perpetuating what is known to be a cheat or deception." *Grumbine,* 2010 Bankr. Lexis 4179, at *12 (citations omitted).

A claim under subsection (A) for false pretenses requires the following elements: "(1) an implied misrepresentation or conduct by the defendants; (2) promoted knowingly and willingly; (3) that creates a contrived and misleading understanding of the transaction on the part of the plaintiffs; (4) which wrongfully induced the plaintiffs to advance money . . . to the defendant." *Nicholson v. Nicolai et al. (In re Nicolai)*, 2007 Bankr. Lexis 339, at *7 (Bankr. D.N.J. Jan. 31, 2007) (citing *In re Hambley,* 329 B.R. 382, 396 (Bankr. E.D.N.Y. 2005)). Similarly, the elements of a false representation and actual fraud are as follows: (1) the debtor made misrepresentations; (2) that he knew were false at the time they were made; (3) that he made them with the intent and purpose of deceiving a creditor; (4) that the creditor [justifiably] relied on such representations; and (5) that the creditor sustained a loss as a proximate result of the representation. *Trump Plaza Assocs. v. Poskanzer (In re Poskanzer)*, 143 B.R. 991, 999 (Bankr. D.N.J. 1992); *see Field v. Mans*, 516 U.S. 59, 74 (1995) (for "justifiable" reliance).

6

The elements of a section 523(a)(2)(A) claim are conjunctive. *In re Cirineo*, 110 B.R. 754, 762 (Bankr. E.D. Pa. 1990). The Plaintiff must prove each of the above by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 290 (1991).

"[The] disposition of dischargeability complaints turns largely on the credibility of the parties." *In re Butler*, 86 B.R. 829, 831 (Bankr. E.D. Pa. 1988) (citations omitted). "It is necessary to receive live testimony from the most significant party involved, i.e., the debtor, to make a credibility determination." *Id.* Accordingly, both the Plaintiff and Defendant testified at trial and were thoroughly cross-examined by counsel. The Court found both the Plaintiff and the Defendant credible and candid witnesses. The parties offered roughly similar recollections of the circumstances and statements made in connection with the 2007 and 2009 Loans (together, the "Loans"). Accordingly, the disposition of this case turns on whether the Defendant's statements were knowingly false and made with intent to deceive.

Section 523(a)(2) requires a plaintiff to prove that the defendant knew of the false nature of his statements and that he made them with an intent to mislead or deceive his potential lender. 11 U.S.C. § 523(a)(2); *Poskanzer*, 143 B.R. at 999; *Hambley,* 329 B.R. at 396. Direct evidence is rarely useful in proving the knowledge and intent elements because the analysis goes to a defendant's subjective state of mind. *De La Cruz v. Cohen (In re Cohen)*, 191 B.R. 599, 604 (D.N.J. 1996). "Proof of intent to deceive is measured by the debtor's subjective intention at the time the representation was made." *Nicholson,* 2007 Bankr. Lexis 339, at *8. Therefore, knowledge of the falsity and intent not to repay, or intent to deceive, may be inferred from the "totality of the circumstances." *Id.* (citing *Ins. Co. of Am. v. Cohn (In re Cohn)*, 54 F.3d 1108, 1118-19 (3d Cir. 1995)); *see Fowler Bros. v. Young* (*In re Young*), 91 F.3d 1367, 1375 (10th Cir. 1996) (intent to deceive is a question of fact).

The appropriate standard for both elements is "gross recklessness." *Cohen*, 191 B.R. at 605 (citing *Cohn*, 54 F.3d at 1118) ("[P]roof of reckless indifference to the truth will satisfy both the knowledge and intent to deceive prongs of § 523(a)(2)(A)"); *see also DiPietro v. Drossel (In re Drossel),* 2007 Bankr. Lexis 3862, at \*19 (Bankr. D.N.J. Nov. 7, 2007). A defendant is reckless when he commits "unreasonable conduct in disregard of a known or obvious risk from which it is highly probably that harm would follow." *Cohen*, 191 B.R. at 605. This is distinguishable from negligence, which is "characterized as mere thoughtlessness or inadvertence or simple inattention." *Id.*

With respect to the 2007 Loan, the Court finds the elements of a section 523(a)(2)(A) claim have not been proven. The Plaintiff testified that, over the course of approximately 20 years, the Defendant created an impression that he was an honorable man with a successful business, which turned out to be false. The Plaintiff further testified that the transaction was induced by the Defendant's representations that "he didn't want to go to banks . . . [because he] didn't want to bother with paperwork," and that private loans were quicker and "a way of giving his friends interest." (Hr'g Tr. dated Dec. 8, 2011 ("Dec. 8 Hr'g Tr."), 17:13-25, 19:10-11) The argument, however, is not consistent with the circumstances. The parties had a history of successful personal financing transactions dating back to April 2004. (*Id.* at 13:24-14:14:1) The 2007 Loan was a mere continuation of the parties' personal lending history. (*Id.* at 15:18-19)

The Plaintiff testified to various other statements made by the Defendant in connection with the 2007 Loan, specifically, that the Defendant's car dealership was thriving and that he had $5 million in equity in various real estate holdings. (*Id.* at 22:4-9, 84:8-16) Still, the Defendant's conduct in connection with the 2007 Loan does not rise to the level of recklessness, let alone intentional deceit. The Defendant's eventual default has little bearing on his state of mind at the

8

time of the transaction in 2007. *Azegilo*, 2010 Bankr. Lexis 4179, at *19 (the debtor must have intended to deceive at the time of the alleged representation). Interest on the 2007 Loan was regularly paid by the Defendant and the Court simply finds no facts from which fraudulent intent might be inferred with respect to the 2007 Loan. *Id*. at *20. Thus, the 2007 Loan is dischargeable under the Bankruptcy Code.

The 2009 Loan was the product of a more troubling set of circumstances. In February 2009, the Plaintiff was approached by the Defendant for a new loan but refused to make the additional $50,000 loan to the Defendant, which was intended for business purposes. (Dec. 8 Hr'g Tr. 26:2-18) Despite the Plaintiff's refusal, less than a week later, the Defendant again approached the Plaintiff – this time asking for $40,000 – but supported his request with a different, more compelling story. (*Id*. at 30-32:19) Both parties testified that the Defendant asked the Plaintiff for a very short-term loan in order to help Doris Zink, a friend of Mrs. Meyers, purchase a condominium. (*Id*. at 31:13-16) The Plaintiff was told Ms. Zink "was desperate" and she would lose "either [her] home or [the] opportunity" if she could not obtain $40,000. (*Id*. at 33:20-23; *see* Hr'g Tr. dated Jan. 12, 2012 ("Jan. 12 Hr'g Tr."), 11:2-8) The Defendant, however, neglected to mention that Ms. Zink was in fact one of his creditors and was "press[ing] [him] for money back on a loan . . . ." (*Id*. at 11:2-5; *see* Dec. 8 Hr'g Tr. 51:2-4, 103:14-16) Knowing the Plaintiff needed the funds shortly for himself, the Defendant proposed to repay the 2009 Loan within a month by making weekly payments of $10,000. (Jan. 12 Hr'g Tr. 13:8-16) The Plaintiff, still hesitant, discussed the matter with his wife and they agreed to make the loan to their friend. Two days after borrowing the $40,000, the Defendant defaulted on the 2007 Loan interest payment and would fail to ever make a payment on the 2009 Loan. (Dec. 8 Hr'g Tr. 40:3-25) This, the Plaintiff argues, clearly evidences the Defendant never intended to repay the 2009 Loan. (*Id*. at 89:18-15, 90:1-8)

9

Under section 523(a)(2)(A), "a misrepresentation of an intent to perform can give rise to grounds for [nondischargeability] . . . ." *Webber v. Giarratano (In re Giarratano)*, 299 B.R. 328, 336 (Bankr. D. Del. 2003). Here, the Plaintiff must demonstrate that the Defendant had no intent to repay the 2009 Loan at the time the debt was incurred. *See Giansante & Cobbe, LLC v. Singh (In re Singh)*, 433 B.R. 139, 163 (Bankr. E.D. Pa. 2010). Simple failure to perform or repay, without more, is insufficient. *See Giarrantano*, 299 B.R. at 336. Courts are careful not to confuse a debtor's ability to repay with his intent to repay. *See Greater Pittsburgh Police Federal Credit Union v. Hilley (In re Hilley)*, 301 B.R. 819, 822-23 (Bankr. W.D. Pa. 2003) (misrepresentations regarding ability to repay respect a debtor's financial condition and thus, are only actionable under section 523(a)(2)(B)). Courts must question "whether the debtor either intentionally or with recklessness as to its truth or falsity, made the representation that he intended to repay the debt." *Universal Bank, N.A. v. Jadusingh (In re Jadusingh)*, 2000 Bankr. Lexis 1757, at *13-14 (Bankr. E.D. Pa. Dec. 14, 2000) (quoting *Anastas*, 94 F.3d at 1286). Importantly, a debtor's subjective intent to repay may be inferred from the "totality of the circumstances." *Id.*; *see Nicholson*, 2007 Bankr. Lexis 339, at *8.

Here, after hearing all of the evidence and observing the witnesses, the Court finds that, at a minimum, the Defendant acted recklessly and misrepresented his intent to repay the 2009 Loan. The parties' testimony shows the Defendant explicitly represented his intention to repay the Plaintiff $10,000 per week after receiving the $40,000 Loan. Though not reflected in the promissory notes, the Defendant testified that he intended to pay back the loan in one month's time at the rate of $10,000 per week. (Jan. 12 Hr'g Tr. 13:8-16; *see* Dec. 8. Hr'g Tr. 32:5-23) Relying on these representations, the Plaintiff reluctantly lent $40,000 to the Defendant. The Defendant defaulted on the 2007 Loan just two days later and he would never make another payment to the Plaintiff on

10

either Loan. At trial, the Defendant failed to offer a credible explanation for his immediate default following the 2009 Loan, except to indicate that he did not receive funds from GM which he expected.

The Court is aware that the Defendant's business enterprise was his GM dealership, Preakness Chevrolet. The Defendant testified that Preakness had been losing money since 2006, but began "hemorrhaging" in 2008. (Jan. 12 Hr'g Tr. 87:3-24) Further, the Defendant testified that he typically received a weekly payment of $25,000 from GM, but that after executing the 2009 Loan, those payments began to "slow[] [] down and stop[] . . . ." (*Id.* at 29:3-12) Nevertheless, the Defendant later testified and the record confirms that he managed to make approximately $150,000 in interest payments to various other creditors in 2009. (*Id.* at 33:13-18) According to the Defendant, those funds were "earmarked" for other creditors and could not be applied to the Loans. (*Id.* at 34:13-35:2) Finally, the Defendant testified that the Plaintiff told him to "concentrate on the principal" and that the interest was secondary. (*Id.* at 17:2-12, 86:14-22) While paying some creditors to the exclusion of others does not necessarily entitle an unpaid creditor to a judgment of nondischargeability, a debtor's financial condition at the time of a transaction may indicate fraudulent intent for the purposes of section 523(a)(2)(A). *Jadusingh*, 2000 Bankr. Lexis 1757, at *9-11. Given the Defendant's precarious financial position, his substantial financial and business experience, and the proximity of the Defendant's default to the 2009 transaction, the Court finds that the Defendant intentionally – or, at the very least, recklessly – misrepresented an intent to repay the 2009 Loan. *Cohen*, 191 B.R. at 605.

Still, the Plaintiff must show that he justifiably relied on the Defendant's misrepresentation. A debtor's reliable payment history may support a finding of justified reliance. *Jadusingh*, 2000 Bankr. Lexis 1757, at *16-17 (justifiable reliance where debtor reliably paid over an eight-year

11

period). Here, the parties had a history of personal loan transactions dating back to 2004. At trial, the Plaintiff testified that the Defendant "never missed a payment from '04 to '09 when he had outstanding loans . . . . So why would I even think that he would not pay [the 2009 Loan]?" (Dec. 8 Hr'g Tr. 37:1-3) The Court can only concur with that belief and there is no question but that the Plaintiff justifiably relied on the Defendant's representations.

For the reasons stated above, the 2009 Loan is nondischargeable pursuant to section 523(a)(2)(A).

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

*s/ Donald H. Steckroth*
_____
DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated:   March 8, 2012